# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**TAMISHA PEGUES**                                                                                              **PLAINTIFF**

**VS.**                                                                        **CAUSE NO. 3:15-CV-00121-MPM-JMV**

**MISSISSIPPI STATE VETERANS HOME;**
**AMANDA MAY, Individually and in Her**
**Official Capacity as the Administrator of**
**Mississippi State Veterans Home; and**
**STEPHANIE SPEARS, Individually and**
**In Her Official Capacity as the Assistant**
**Director of Nursing**                                                                                         **DEFENDANTS**

## ORDER

Defendants Mississippi State Veterans Home ("MSVH"), Amanda May and Stephanie Spears have filed motions to dismiss in this case which have been partially conceded by plaintiff Tamisha Pegues. This court will grant the motions to dismiss to the extent that they have been conceded, and it will also address, on its own motion, jurisdictional concerns which it has developed regarding certain other claims asserted by plaintiff after having reviewed the parties' submissions in this case.

This is a case which finds itself in a regrettably deficient state of pleading and briefing, considering that it is set to go to trial on September 11, 2017. This case involves, at its heart, a claim for disability discrimination based upon plaintiff's allegations that her former employer MSVH unlawfully refused to accommodate her disability resulting from a ruptured disc. Plaintiff further contends that she was improperly fired from her position at MSVH after defendant determined that it could no longer offer light duty as an option for its employees.

1

Defendants have presently filed motions to dismiss most, but not all, of the claims asserted against them, and, as noted previously, plaintiff has conceded that some of her claims should be dismissed. In her response, however, plaintiff argues certain other claims which she asserts should be permitted to go to trial, and it is unclear to this court whether defendants agree with this assertion, since they did not file a rebuttal brief. This situation appears to be based partly upon the fact that the former lead counsel for defendants filed a motion to withdraw from this case on April 26, 2017, which is approximately when defendants would have been required to file their rebuttal briefs. In (successfully) seeking permission to withdraw, counsel noted that he had "resigned from his position as Special Assistant Attorney General effective April 30, 2017, and will no longer be employed by the Office of the Attorney General." [Motion to withdraw at 1]. Perhaps as a result of their former counsel's employment situation,[1] the briefing on the motion to dismiss leaves a good deal to be desired, and there are a number of unsettled issues in this court's mind even after having reviewed defendants' motions to dismiss and plaintiff's responses to them.

The lack of rebuttal briefing aside, it strikes this court that defendants' motions to dismiss are rather bare-bones in nature, given that they consist almost entirely of citations to generalized principles of law, dealing primarily with Eleventh Amendment immunity. Notably, the motions to dismiss make little, if any, effort to point out weaknesses in the specific allegations of plaintiff's Third Amended Complaint, even though that complaint strikes this court as being, if anything, even more bare-bones than the motions to dismiss. For example, the Third Amended

---

[1]Defendants' co-counsel has taken over litigation of the case, and they are accordingly not lacking in representation.

Complaint makes conclusory allegations that the individual defendants May and Spears, who are administrators at MSVH, face liability under state and federal law, but it never comes close to making any sort of detailed allegations in this regard. Specifically, the complaint alleges that:

> 5. Plaintiff was employed by the Defendant Veterans Home for six and one-half (6 ½) years. On approximately December 4, 2013, Plaintiff ruptured a disc while on the job. The ruptured disk substantially affected Plaintiff's ability to perform everyday life activities, and constituted a "disability" within the meaning of the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act, and the Rehabilitation Act of 1973. Plaintiff was placed on light duty. Defendant, in violation of doctor's orders, required Plaintiff to perform light-duty by lifting.
>
> 6. Consistent with the purposes of the Mississippi Workers' Compensation Act, Plaintiff reported to Mississippi Workers' Compensation Commission ("MWCC") that she was being required, as a condition of her employment, to violate doctor's orders. The MWCC then contacted Defendant Veterans Home. Immediately thereafter, Defendant Veterans Home, acting through Defendant Spears, but with the consent and direction of Defendant May, terminated Plaintiff's employment.
>
> In terminating Plaintiff on April 2, 2014, Defendants told Plaintiff that there would no longer be any light-duty work available for any employees. Defendant Veterans Home terminated Plaintiff by abolishing its light-duty work because Plaintiff had reported to the MWCC that Defendant Veterans Home was violating doctor's orders by requiring her to perform work in violation of the doctor's orders. Except for Plaintiff's report to the MWCC, Defendants may have accommodated Plaintiff by allowing her light-duty work.
>
> 7. A report to the MWCC that employees are being required to work for a state agency in conflict with doctor's orders is a report on a matter of public concern. Furthermore, following the implicit requirements of state law by reporting on one's work conditions to the MWCC is speech protected by the petitions clause of the First Amendment to the United States Constitution.
>
> 8. Defendant Veterans Home refused to accommodate Plaintiff's disability by allowing her to perform light-duty work. Instead, it abolished its light-duty jobs. Light-duty work would have been a reasonable accommodation for Plaintiff's injury.
>
> 9. Defendant Veterans Home and individual Defendants willfully violated

Plaintiff's rights under the Family and Medical Leave Act ("FMLA"). Even though the Veterans Home offered FMLA leave to its employees and Plaintiff qualified for FMLA leave, and they were aware that Plaintiff had an injury that qualified her for FMLA leave, they never offered her leave instead of firing her.
10. Plaintiff has suffered lost income and mental anxiety and stress.

[Third Amended Complaint at 3-4].

These allegations are the only ones of any specificity in the complaint, and there is nothing in them which spells out what the individual defendants May and Spears may have done to subject themselves to liability in this case. Nevertheless, the remaining portion of the complaint alleges liability on the part of these individual defendants, alongside the MSVH, under various causes of action, to wit:

11. Defendants are liable to Plaintiff as follows:

A. The Mississippi State Veterans Home is liable to Plaintiff for damages for disability discrimination under the Rehabilitation Act of 1973; and

B. The Mississippi State Veterans Home is liable to Plaintiff for damages under the Americans with Disabilities Act, if the Mississippi State Veterans Home is not an arm of the State. If the Court should find that the Mississippi State Veterans Home is an arm of the State, such that it is entitled to Eleventh Amendment immunity, then the Defendants Spears and May, in their official capacities, are liable to Plaintiff for injunctive and declaratory relief to include back pay and reinstatement;

C. Defendants Spears and May are liable to Plaintiff in their individual capacities for the state law violation of malicious interference with employment; and

D. Defendants Spears and May are liable to Plaintiff, in their individual and official capacities, for damages for violation of the First Amendment. If the Eleventh Amendment bars damages, then Defendants are liable for injunctive and declaratory relief of backpay and reinstatement.

E. The Mississippi State Veterans Home and Defendants Spears and May, in their individual and official capacity, are liable to Plaintiff for violating her rights under the Family and Medical Leave Act in firing her instead of offering her FMLA leave. If the Court should find that the Mississippi State Veterans Home is an arm

of the State, such that it is entitled to Eleventh Amendment immunity, then the Defendants Spears and May, in their official capacities, are liable to Plaintiff for injunctive and declaratory relief to include back pay and reinstatement.

[Third Amended Complaint at 4-5].

Given the language of her complaint, plaintiff appears to regard May and Spears as "backup" defendants of sorts, in the event the MSVH is dismissed on Eleventh Amendment immunity grounds (as she has conceded is appropriate with regard to some of her claims). However, individual state employees do not exist simply as entities to be sued in the event that their employer successfully asserts Eleventh Amendment immunity; rather, they must have actually committed wrongful acts which subject them to liability under applicable laws. This court regards it as plainly insufficient to assert that these defendants were administrators at MSVH who were involved in the employment decisions *vis a vis* plaintiff, since employment discrimination law does not generally provide for individual liability on the part of managers. Moreover, given that plaintiff concedes that Eleventh Amendment immunity bars many of her claims, this court has concerns about whether plaintiff's claims against Spears and May simply represent an effort to circumvent Eleventh Amendment immunity and whether such is legally permissible.[2]

---

[2] The U.S. Supreme Court has held that state officials are entitled to Eleventh Amendment immunity when judgments rendered against them are to be paid with state funds. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed. 2d 662 (1974). The determination whether the judgment will be paid by the individual defendants or by the state is often difficult to make. When the distinction is unclear, the essential nature and effect of the proceeding must be examined. *Ex Parte New York*, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347 (1945). However, the existence of an indemnification statute promising to pay judgments when an officer is sued in his individual capacity does not extend the Eleventh Amendment's protections to the officer. *Hudson v. City of New Orleans*, 174 F.3d 677, 687 n. 7 (5th Cir.1999) *citing Downing v. Williams*, 624 F.2d 612, 626 (5th Cir.1980) ("Such an indemnity statute is only an agreement between the state and these

As to plaintiff's state law claims, the Third Amended Complaint is completely silent regarding what wrongful acts May and Spears might have committed which subject them to liability for "malicious interference with employment" under Mississippi law. This silence is particularly troubling in light of the fact that the Mississippi Tort Claims Act (MTCA) generally provides for individual immunity on the part of state workers. There is an exception to this general immunity for complaints which allege "malice" on the part of individual employees, and plaintiff might argue that this exception applies here. *See* Miss. Code Ann. § 11-46-5(2). Nevertheless, it strikes this court as being contrary to the Legislature's intent to permit employees to be sued based upon merely conclusory allegations of malice, lacking in any specificity.

In the last few years, this court has increasingly seen the torts of malicious interference with employment relations and/or malicious interference with contract being asserted as companion claims of sorts to various federal employment discrimination and § 1983 claims. The theory appears to be that any violation of federal law in the employment context also constitutes malicious conduct on the part of a supervisor, thereby subjecting them to individual liability for malicious interference with employment relations. However, this court strongly doubts that it was the Mississippi Supreme Court's intent to have the malicious interference cause of action serve as a "catch all" tort in the employment discrimination context. Moreover, it clearly seems to have been the Legislature's intent in enacting the MTCA that state and local employees would only find themselves as tort defendants in rather extraordinary situations. That being the case,

---

individuals and cannot thereby be converted into an extension of Eleventh Amendment immunity by the state."). Based on this authority, this court will assume that it has jurisdiction over plaintiff's claims asserted against May and Spears individually, but it still has concerns regarding the highly vague nature of the complaint's allegations against these defendants, given the Eleventh Amendment concerns which exist in this context.

this court regards the current situation, in which employees seem to be routinely named as malicious interference defendants in employment discrimination cases, as being a troublesome one which places unintended burdens on state and local employees.

Mississippi Supreme Court precedent suggests that it may share some of this court's concerns in this context. Most notably, in *Whiting v. University of Southern Mississippi*, 62 So.3d 907, 916 (Miss. 2011), the Mississippi Supreme Court held that a malicious interference claim is subject to the MTCA and thus that the statutory notice requirement applies to such claims. In 2013, the Fifth Circuit held based on *Whiting* (which was the most recent Mississippi State Court decision on the issue) that malicious interference claims are subject to the MTCA. *See Johnson v. City of Shelby, Miss.*, 743 F.3d 59, 61 (5th Cir.2013), cert. granted, judgment rev'd on other grounds, —— U.S. ——, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014). It appears to this court that, in light of *Whiting* and *Johnson*, there exist a number of unsettled issues regarding the circumstances under which malicious interference claims might be brought against state and local entities and who the proper defendants (i.e. the employer or the individual employee) are in such cases. This court will certainly not be able to resolve these uncertainties in this case, but it will make some general observations regarding the proper role of the malicious interference action in employment cases.

Assuming that there are some situations in which a malicious interference claim could be asserted against a state or local employee individually, then it seems much more likely to this court that those situations would involve an interference based upon personal factors which are not already addressed by federal anti-discrimination laws. For example, it strikes this court that there would be a stronger argument for individual liability if an employee sought to maliciously

interfere with another employee's employment based on, say, a romantic feud. In such a situation, there would be a stronger argument that the individual defendant had been acting outside the scope of her employment and should accordingly face personal liability, notwithstanding the provisions of the MTCA. In that scenario, there would also be a stronger argument that the court was dealing with a motivation which is not already addressed by federal law and that, as such, the malicious interference tort might have a role to play in addressing it.

Barring some indication from the Mississippi Supreme Court otherwise, this court will be extremely reluctant to conclude that the malicious interference tort was intended to serve as a duplicate state law remedy for cases where an employee is alleged to have acted with a motivation already prohibited by federal anti-discrimination laws. In so stating, this court notes that federal law has developed its own detailed body of law for courts to use in addressing allegations of employment discrimination and, unlike most states, Mississippi has no comparable body of state anti-discrimination law. While this absence may be regarded by many as regrettable, the fact remains that the malicious interference cause of action was simply not designed to deal with a subject matter as delicate and complex as workplace discrimination. Moreover, the discriminatory motives in hiring and firing which are made unlawful by federal anti-discrimination law are generally not unlawful under Mississippi's employment at-will scheme. In this case, for example, the harm which plaintiff appears to allege is that "defendants" failed to adequately accommodate her disability, but the basic duty to provide such accommodations arises from federal, not Mississippi, law.

Plaintiff simply alleges, in conclusory fashion, that "defendants" committed various unlawful acts *vis a vis* her employment, and her complaint contains no suggestion that the actions

8

taken by May and Spears towards her were made in anything other than their scope as administrators at MSVH. The complaint makes no effort to separate the actions of the governmental and individual defendants in this context, instead grouping them together in blanket allegations against "defendants." Moreover, plaintiff alleges no personal motivation on the part of May and Spears to interfere with her employment, apart from merely performing their duties as MSVH employees. Given the complete lack of specificity as to plaintiff's claims against these defendants, and considering also the concerns expressed above, this court is, at this juncture, rather strongly inclined to grant directed verdict on these claims at trial. This court also recommends that plaintiff seriously consider whether she wishes to pursue these claims against Spears and May further or whether she wishes to concentrate on her (seemingly stronger) federal disability claim against MSVH under the Rehabilitation Act.

While this court will thus reserve judgment on plaintiff's malicious interference claims, it has determined that there is a jurisdictional issue in this case which it must presently address on its own motion. In particular, this court notes that MSVH's motion to dismiss only asserts that it is entitled to Eleventh Amendment immunity on plaintiff's ADA claim and on her claim for injunctive relief. Plaintiff correctly notes that defendant does not seek dismissal of her claims under the Rehabilitation Act of 1973 and under the FMLA. While it appears (as discussed below) that plaintiff's Rehabilitation Act claim against the MSVH may not be barred by Eleventh Amendment immunity, this court has serious doubts regarding whether it has jurisdiction to entertain plaintiff's FMLA claim against MSVH. This court concludes that it must resolve this issue on its own motion if necessary, since Eleventh Amendment immunity is a jurisdictional issue which a court may raise *sua sponte*. *See Perez v. Region 20 Educ. Serv. Ctr.,* 307 F.3d 318,

333 n. 8 (5th Cir. 2002) ("[W]e may consider this [sovereign immunity] issue *sua sponte* because it bears on this court's subject matter jurisdiction.")

Based on this court's review of authority, it seems highly questionable whether it has jurisdiction to entertain plaintiff's FMLA claim against the MSVH. In so concluding, this court notes that in *Coleman v. Court of Appeals*, 132 S.Ct. 1327, 1332, 182 L. Ed. 2d 296 (2012), the U.S. Supreme Court held that suits against states under the self-care provision of the FMLA are barred by Eleventh Amendment immunity. *Id.* at 1332. The plaintiff in *Coleman* was an employee of the Court of Appeals of Maryland who requested sick leave and was informed that he would be terminated if he did not resign. He sued his employer in federal court, alleging, *inter alia*, that his employer violated the FMLA by failing to grant him self-care leave. *See id.* at 1332-33. In finding sovereign immunity applicable, the Supreme Court wrote that Congress "failed" to "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations...when it allowed employees to sue States for violations of the FMLA's self-care provision," and that, as such, the Eleventh Amendment barred claims brought under this provision of the FMLA. *Id.* at 1338.

In so holding, the Supreme Court in *Coleman* distinguished its earlier opinion in *Nevada Department of Human Resources v. Hibbs*, 538 U.S. 721, 728, 123 S.Ct. 1972 (2003). In *Hibbs*, the Supreme Court held that Congress had, in fact, validly abrogated Eleventh Amendment immunity from suit for violations of the *family care* provision of the FMLA. The FMLA's family care provision is a separate one which enables employees to take leave for the care of a spouse, child, or parent with a serious health condition. The Supreme Court's holding in *Hibbs* "rested on evidence that States had family-leave policies that differentiated on the basis

10

of sex and that States administered even neutral family-leave policies in ways that discriminated on the basis of sex." *Coleman*, 132 S.Ct. at 1332. In *Coleman*, the Supreme Court concluded that, in contrast to the family-leave provision, the FMLA's self-care provision was created "[w]ithout widespread evidence of sex discrimination or sex stereotyping in the administration of sick leave," and that "the congressional purpose in enacting the self-care provision is unrelated to those supposed wrongs." *Id.* at 1335.

In this case, plaintiff alleges that she was unlawfully deprived of FMLA leave based on the ruptured disc which she suffered, and it appears to this court that these allegations fall under the scope of *Coleman*, rather than *Hibbs*. Indeed, it does not appear that plaintiff's claims implicate any of the gender-related concerns which motivated the Supreme Court's holding in *Hibbs*, given that ruptured discs affect men and women more or less equally. While this court is certainly open to being persuaded otherwise, it concludes that it requires clarification of this issue before it can allow plaintiff's FMLA claim against MSVH to go to trial.

In the event that this court concludes that plaintiff's FMLA claims against MSVH are barred by the Eleventh Amendment, then she will likely find it very difficult to persuade it that her FMLA claims for injunctive relief against Spears and May in their official capacity should be allowed to go forward.[3] While plaintiff's complaint specifically disclaims any intent to seek monetary damages against Spears and May *individually* under federal law, [Third Amended Complaint at 2] her complaint alleges that these defendants should be liable *officially* for

---

[3]Indeed, as noted below, plaintiff specifically withdraws any "official capacity" claims against May and Spears, and this would seemingly include a claim for injunctive relief against these defendants.

11

"injunctive and declaratory relief to include back pay and reinstatement"[4] even if this court finds that Eleventh Amendment immunity applies to her FMLA claims against the MVSH. [Complaint at 5]. This strikes this court as being a rather obvious attempt to circumvent Eleventh Amendment immunity, and if plaintiff wishes to prevail on such a claim, then she should be prepared to offer precedent which clearly authorizes it.

From reviewing the parties' submissions, it appears to this court that the "heart" of plaintiff's claims in this case is her Rehabilitation Act claim against the MSVH. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability...shall, solely by reason of...his disability, be excluded from the participation, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Plaintiff's complaint alleges that the MSVH "receives federal funding, including, but not limited to, payments from Medicare," and defendant does not dispute this assertion. The ADA and the Rehabilitation Act each prohibit public entities from discriminating against an individual based on his or her disability, *see* 42 U.S.C. § 12132; 29 U.S.C. § 794(a), but, crucially, Eleventh Amendment immunity only appears to present a bar with regard to plaintiff's ADA claim. *See Board of Trustees of Univ. Of Alabama v. Garrett*, 531 U.S. 356 (2001).

Defendant has not sought Eleventh Amendment dismissal of plaintiff's Rehabilitation Act claim, and the Fifth Circuit held in *Miller v. Texas Tech Univ. Health Scis. Ctr.*, 421 F.3d 342, 348 (5th Cir. 2005) that a state defendant's acceptance of federal funds serves to waive any

---

[4]This court notes that including back pay within the scope of "injunctive and declaratory relief" seems to be improper.

Eleventh Amendment immunity as to a claim under § 504 of the Rehabilitation Act. This appears to resolve any jurisdictional concerns in this context. This court has not conducted an extensive review of the merits of plaintiff's Rehabilitation Act claim, and it may be that defendant will be able to present a valid defense to it at trial. At this juncture, however, plaintiff's complaint does appear to assert a coherent theory of disability discrimination, and, once again, defendant has not presented any arguments supporting its dismissal. Given these facts, plaintiff's § 504 claim against MSVH seems likely to be the primary (if not the only) claim which this court allows to go to the jury in this case.

That brings this court to the portions of defendants' motions to dismiss which have been conceded by plaintiff. In her briefing, plaintiff has chosen to withdraw: 1) all her claims under the Americans With Disabilities Act; 2) her First Amendment claims against Spears and May; 3) her claims for injunctive relief against Spears and May; 4) her official capacity claims against Spears and May. This court will grant defendants' motions to dismiss as to these claims, and plaintiff should, of course, delete any reference to these withdrawn claims from the pretrial order. This court notes that plaintiff argues in her brief that "[d]efendants have not moved to dismiss Plaintiff's claims against May and Spears, in their individual capacities, under the Family and Medical Leave Act; thus, these claims should go forward to trial." [Brief at 4]. This appears to suggest that plaintiff wishes to recover monetary damages against these defendants, since any request for injunctive relief (such as an order of reinstatement) would require them to act in their official capacities. As noted previously, however, plaintiff specifically asserted in her complaint that she "does not sue [May and Spears] in [their] individual capacity for damages under federal law." It seems clear that an FMLA claim for damages against Spears and May would be one

seeking "damages under federal law," and such a claim clearly seems barred by the representations made in plaintiff's complaint. Barring a truly compelling argument from plaintiff otherwise, this court will hold her to her representation in this regard and bar her from seeking damages against May and Spears under the FMLA, or any other provision of federal law.

In light of the foregoing, it is ordered that defendants' motions [66-1, 68-1] to dismiss are granted in part and denied in part. If plaintiff wishes to continue to assert an FMLA claim against the MSVH, then she should submit, within two weeks of this order, authority and arguments indicating that this court has jurisdiction to consider that claim. Defendants shall advise this court of their own position on this issue, with supporting authorities, within seven days of plaintiff's briefing.

So ordered, this the 2nd day of August, 2017.

**/s/ Michael P. Mills**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**