**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**TAMISHA PEGUES**                                                                                    **PLAINTIFF**

**VS.**                                                                 **CAUSE NO. 3:15-CV-00121-MPM-JMV**

**MISSISSIPPI STATE VETERANS HOME;
AMANDA MAY, Individually and in Her
Official Capacity as the Administrator of
Mississippi State Veterans Home; and
STEPHANIE SPEARS, Individually and
In Her Official Capacity as the Assistant
Director of Nursing**                                                                    **DEFENDANTS**

**PRETRIAL ORDER**

1.      Choose [by a ✔ mark] one of the following paragraphs, as is appropriate to the action:

A pretrial conference was held as follows:

Date:   August 10, 2017          Time:  10:00 a.m.
Date:   August 11, 2017          Time:  11:00 a.m.

United States Courthouse at Greenville, Mississippi, before the Honorable Magistrate Judge Jane M. Virden.

2.      The following counsel appeared:

a.      For the Plaintiff:

| Name | Postal and Email Addresses | Telephone No. |
|---|---|---|
| Ron L. Woodruff | Waide & Associates, P.A. 332 N. Spring Street P. O. Box 1357 Tupelo, MS 38802 *rlw@waidelaw.com* | (662) 842-7324 |

b.      For the Defendants:

| Name | Postal and Email Addresses | Telephone No. |
|---|---|---|
| Benny M. "Mac" May Attorney General's Office | Post Office Box 220 Jackson, Mississippi 39201 *bemay@ago.state.ms.us* | 601-359-3522 |

FORM 3 (ND/SD MISS. DEC. 2011)

**3.** The pleadings are amended to conform to this pretrial order.

**4.** The following claims (including claims stated in the complaint, counterclaims, crossclaims, third-party claims, etc.) have been filed:

A. The Mississippi State Veterans Home is liable to Plaintiff for damages for disability discrimination ( in the form of termination of employment and failure to accommodate) under the Rehabilitation Act of 1973;

B. Defendants Spears and May are liable to Plaintiff in their individual capacities for the state law violation under the MTCA of malicious interference with employment; and

C. Defendants Spears and May, in their individual capacities, are liable to Plaintiff for violating her rights under the Family and Medical Leave Act for monetary damages in firing her instead of offering her FMLA leave.

**5.** The basis for this court's jurisdiction is:

This Court has federal question jurisdiction under 28 U.S.C. § 1331, for causes of action The Rehabilitation Act of 1973 and The Family and Medical Leave Act. This Court has supplemental jurisdiction to address Plaintiff's claims state law claims against the individual Defendants for malicious interference with employment. This action is authorized by 42 U.S.C.A. § 1983.

**6.** The following jurisdictional question(s) remain(s) [If none, enter "None"]:

None.

**7.** The following motions remain pending [If none, enter "None"] [Note: Pending motions not noted here may be deemed moot]:

Plaintiff's Motion *in Limine* (unopposed)

**8.** The parties accept the following **concise** summaries of the ultimate facts as claimed by:

**a.** Plaintiff:

Plaintiff was employed by the Defendant Veterans Home for six and one-half (6 ½) years. On approximately December 4, 2013, Plaintiff ruptured a disc while on the job. The ruptured disk substantially affected Plaintiff's ability to perform everyday life activities, and constituted a "disability" within the meaning of the Rehabilitation Act of 1973. Plaintiff was placed on light duty. Defendant, in violation of doctor's orders, required Plaintiff to perform non-light-duty tasks by lifting.

Plaintiff reported that she was being required, as a condition of her employment, to violate doctor's orders. Immediately thereafter, Defendant Veterans Home, acting through Defendant Spears, but with the consent and direction of Defendant May, terminated Plaintiff's employment.

FORM 3 (ND/SD MISS. DEC. 2011)

In terminating Plaintiff on April 2, 2014, Defendants told Plaintiff that there would no longer be any light-duty work available for any employees. Defendant Veterans Home terminated Plaintiff by abolishing its light-duty work because Plaintiff had reported Defendant Veterans Home was violating doctor's orders by requiring her to perform work in violation of the doctor's orders.

Defendant Veterans Home refused to accommodate Plaintiff's disability by allowing her to perform light-duty work. Instead, it abolished its light-duty jobs. Light-duty work would have been a reasonable accommodation for Plaintiff's injury.

The individual Defendants willfully violated Plaintiff's rights under the Family and Medical Leave Act ("FMLA"). Even though the Veterans Home offered FMLA leave to its employees and Plaintiff qualified for FMLA leave, and they were aware that Plaintiff had an injury that qualified her for FMLA leave, they never offered her leave instead of firing her.

**b.** Defendants:

The State Veterans Nursing Home in Oxford comes under the purview of the Mississippi Veterans Affairs Board (hereinafter "MVAB"), an agency of the State of Mississippi. In addition to the nursing home in Oxford, the MVAB operates three other veterans nursing homes in Mississippi: in Collins, Jackson and Kosciusko. The veterans nursing homes provide skilled nursing care to aged and infirmed veterans and their spouses and are licensed facilities with the Mississippi Department of Health.

Pegues was hired on September 8, 2008, as a Direct Care Worker ("DCW") on contract for the Oxford Veterans Home. During the course of her employment, Pegues signed several Job Content Questionaires ("JCQ"), each of which indicate the essential duties required to perform the DCW position. Each JCQ indicates that the DCW position requires "heavy work" in order to provide resident care, including frequent exertion in excess of fifty pounds. Some of the tasks a DCW must perform include feeding, bathing, showering and transporting residents on a regular basis, as well as sweeping and mopping the floors of residents' rooms.

The Oxford Veterans Home is a 150 bed facility that staffs approximately 165 people, 115 of those being full time staff members. According to the Mississippi Department of Health Minimum Standards, the Home must maintain an absolute minimum staffing ratio of 2.85. The MVAB's minimum standards require a 3.0 ratio, with a target ratio of 3.25. The staffing ratio is determined daily by adding the number of employees who directly care for the residents (DCW's and nurses) and dividing by the number of residents admitted to the Home. In order to provide the required care to the veterans, the Home aims to staff at least approximately 37 DCW's for every 24 hour period, seven days a week.

Because the DCW position requires performance of heavy work duties, as stated above, for the Home to run effectively, it is essential that every DCW on staff be able to fully perform the essential duties of their position. None of the four State Veterans Nursing Homes have a DCW position that requires only light duty. If one of the Homes has a need for a receptionist or other similar light duty position at any given time, they may accommodate an employee that has been restricted to light duty by their physician by allowing them to fill that vacant position. Otherwise,

FORM 3 (ND/SD MISS. DEC. 2011)

in order for the Homes to remain properly staffed, they cannot accommodate everyone, or sometimes anyone, restricted to light duty.

Pegues strained her back on December 4, 2013, while helping care for a resident and returned to work per her physician's orders with no restrictions on December 11, 2013. She worked as a DCW with no restrictions until January 31, 2014, when a friend or relative of Pegues brought a note from her physician stating Pegues was not able to return to work as a result of treatment for injuries sustained on December 4, 2013. Pegues then remained off work per her physician's orders until he released her to return to work with light duty restrictions on February 24, 2014. Defendant May, the Administrator of the Oxford Veterans Nursing Home, identified some tasks that Pegues could perform temporarily in order to accommodate her light duty restrictions. Once Pegues returned to work, her supervisor, Faye Miller, made several verbal complaints to May that Pegues was refusing to perform various tasks requested of her, even though they were well within her light duty restrictions.

On March 17, 2014, May was informed that Pegues had reported to the claim adjuster on her workers' compensation claim that Miller was requiring Pegues to perform tasks outside of her light duty restrictions. May investigated the allegations and determined that Miller had not, in fact, directed or requested that Pegues perform tasks outside of her restrictions. May's investigation revealed that Pegues had, in fact, refused to perform the light duty assignments given to her. By way of example, Pegues had been found to have refused to perform duties such as passing out ice to residents and refusing to answer a call light (which only requires the DCW to go to the resident's room who has pressed a call light to see what they need, and should the resident require assistance greater than the DCW can provide alone, the DCW would
request another DCW to help).

May decided to terminate Pegues' employment for failure to perform the duties required of her job, even at a light duty level. The termination letter to Pegues informed her that when she was able to fulfill the job requirements for the DCW position, she could re-apply. Pegues was absolutely not denied a reasonable accommodation for her injury. The Oxford Veterans Home attempted to accommodate her, despite the fact that the Home does not typically have light duty tasks available for DCWs. The MVAB also vehemently denies that Pegues was forced to work outside of her restrictions. In order to meet staffing ratios required by state law, the Home must have an adequate number of employees to provide the essential functions of direct care to the veterans, and Pegues was not able or willing to perform even the lightest of those required functions.

The MVAB also asserts that Pegues was not discriminated against based on a disability, as she did not suffer from a disability. Rather, Pegues had only a transitory physical impairment or injury. In any event, Pegues was granted an appropriate accommodation but still would not perform the tasks assigned. This was the reason for the termination of her employment.

**9.**    **a.**    The following facts are established by the pleadings, by stipulation, or by admission:

1.    Pegues was hired on September 8, 2008, as a Direct Care Worker ("DCW") on contract for the Oxford Veterans Home.
2.    On or about December 4, 2013, Plaintiff ruptured a disc while on the job.
3.    On April 2, 2014, Pegues was terminated.
4.    The MVAB and the MSVH receive federal funding.

FORM 3 (ND/SD MISS. DEC. 2011)

     5.      The MVAB/MSVH are subject to the terms and conditions of the Rehabilitation Act of 1973

     **b.**      The contested issues of fact are as follows:

1. Whether the Veterans Home discriminated against Pegues because of her disability under the Rehabilitation Act by terminating her.
2. Whether the Veterans Home failed to engage in the interactive process of accommodating Pegues' disability under the Rehabilitation Act.
3. Whether Pegues' rights under the Family and Medical Leave Act were violated by the individual defendants Spears and/or and May.
4. Whether Spears and/or May maliciously interfered with Pegues' employment with the Veterans Home.
5. Whether Spears and/or May acted willfully as set forth in the FMLA.
6. Whether Pegues is entitled to compensatory damages from MVAB, including any wages or other compensation lost as a result of any violation by MVAB, and/or noneconomic damages for emotional distress, pursuant to the Rehabilitation Act.
7. Whether Pegues is entitled to compensatory damages from Spears and/or May, including any wages or other compensation lost as a result of any violation by Spears and/or May, and/or noneconomic damages for emotional distress on her claim for malicious interference with employment.
8. Whether Pegues is entitled to punitive damages from Spears and/or May on her claim for malicious interference with employment.
9. Whether Pegues is entitled to compensatory damages from Spears and/or May, including any wages or other compensation lost as a result of any violation by Spears and/or May, and/or noneconomic damages for emotional distress, pursuant to the FMLA.
10. Whether Pegues is entitled to liquidated damages from Spears and/or May pursuant to the FMLA.
11. Whether Pegues was ever required or requested to work outside of the restrictions set forth by her physician.
12. Whether, at the time of the termination of her employment, Pegues could perform the essential functions of her job as a Direct Care Worker with or without reasonable accommodations.
13. What consequences would have resulted from Defendants' not requiring Pegues to perform certain job duties beyond her light duty restrictions.
14. Whether Pegues could perform the essential functions of her job as a Direct Care Worker, without accommodation, if it was ordered by this Court that she be reinstated to her position.
15. When, if ever, Pegues could have returned to full duty work at the Veterans Home had her employment not been terminated.
16. Whether any of the four State Veterans Nursing Homes have a DCW position that requires only light duty.

FORM 3 (ND/SD MISS. DEC. 2011)

    **c.**     The contested issues of law are as follows:

1.     Whether Pegues can make out a *prima facie* case of disability discrimination, or failure to accommodate, in violation of the Rehabilitation Act of 1973 against the MVAB.
2.     Whether Pegues can make out a *prima facie* case of violations of the Family and Medical Leave Act against Spears and/or May in their individual capacities.
3.     Whether Pegues can make out a *prima facie* case of malicious interference with employment against Spears and/or May in their individual capacities.
4.     Whether Pegues is entitled to attorney fees and costs, reinstatement or front pay.
5.     Whether Pegues is a qualified individual with a disability under the Rehab. Act .
6.     Whether Pegues is an eligible employee under the FMLA.
7.     Whether Pegues was discriminated against in violation of the Rehabilitation Act (mixed question of law and fact).
8.     In the event that Pegues is found to have made any valid claim for relief, whether Pegues would be entitled to any damages from after June 30, 2014, the date that her contract for personal services expired.
9.     Whether Defendants are entitled to costs in the event of a verdict in their favor.
10.     Whether plaintiff may proceed against the individual defendants in their individual capacities for damages under the FMLA in light of the third amended complaint's statements to the contrary (p2, third amended complaint)?
11.     Whether plaintiff can proceed on a malicious interference claim under the MTCA against the individual employees in their individual capacities where, inter alia, the motivation for the complained of conduct is the same as that which constitutes a complained of violation of federal employment laws?
12.     Whether punitive damages are available as a potential remedy to Pegues on her claim for malicious interference with employment.
13.     Whether Pegues is entitled to a jury trial on her claim for malicious interference with employment.

**10.**     The following is a list and brief description of all exhibits (except exhibits to be used for impeachment purposes only) to be offered in evidence by the parties. **Each exhibit has been marked for identification and examined by counsel.**

    **a.**     To be offered by the Plaintiff:

P-1     Doctor's Excuse dated 12/10/13
P-2     Doctor's Excuse dated 1/31/14
P-3     Doctor's Excuse dated 2/24/14
P-4     Termination Letter dated 4/2/14 (also D-13)
P-5     Doctor's Excuse dated 12/5/13
P-6     Light Duty Examples
P-7     2011 Performance Assessment
P-8     Termination/Resignation Request
P-9     Job Description - Direct Care Worker (also D-2)
P-10     Agreement for Personnel Services (also D-5)
P-11     Pegues Light Duty Run
P-12     First Report of Injury

FORM 3 (ND/SD MISS. DEC. 2011)

     P-13    Excuse from Work Compilation
     P-14    Email McGregor dated 1/31/14
     P-15    Email Quick dated 3/17/14
     P-16    2013 Taxes
     P-17    2014 Taxes
     P-18    [withdrawn]
     P-19    2016 Taxes
     P-20    Application
     P-21    CNA Certificate
     P-22    State Employee Handbook (Including FMLA Policy)
     P-23    Federal Payments to MSVH
     P-24    Defendant's Responses to Discovery
     P-25    Oxford Medical Clinic Medical Records
     P-26    Cornerstone Rehabilitation of Oxford Medical Records
     P-27    MidSouth Pain Treatment Center Medical Records
     P-28    Baptist Memorial Hospital Medical Records

The authenticity and admissibility in evidence of the preceding exhibits are stipulated. If the authenticity or admissibility of any of the preceding exhibits is objected to, the exhibit must be identified below, together with a statement of the specified evidentiary ground(s) for the objection(s):

     Defendants object to the following:

     P-6     FRE 401, FRE 402, FRE 403
     P-7     FRE 401, FRE 402, FRE 403
     P-11    FRE 401, FRE 402, FRE 403, FRE 802
     P-13    FRE 401, FRE 402, FRE 403, cumulative
     P-14    FRE 401, FRE 402, FRE 403
     P-15    FRE 401, FRE 402, FRE 403
     P-19    FRE 401, FRE 402, FRE 403, not previously/timely produced; unsigned
     P-20    FRE 401, FRE 402, FRE 403
     P-21    FRE 401, FRE 402, FRE 403
     P-22    FRE 401, FRE 402, FRE 403
     P-23    FRE 401, FRE 402, FRE 403, FRE 802
     P-24    FRE 401, FRE 402, FRE 403
     P-25    FRE 401, FRE 402, FRE 403, FRE 802
     P-26    FRE 401, FRE 402, FRE 403, FRE 802
     P-27    FRE 401, FRE 402, FRE 403, FRE 802
     P-28    FRE 401, FRE 402, FRE 403, FRE 802

     **b.**    To be offered by the Defendants:

     D-1     Standards of Conduct
     D-2     Job Description (DCW) (also P-9)
     D-3     Job Content Questionnaire (2010)
     D-4     Job Content Questionnaire (2012)
     D-5     Agreement for Personal Services (May 2013) (also P-10)

FORM 3 (ND/SD MISS. DEC. 2011)

D-6    Performance Development Assessment (Jan 2013)
D-7    Performance Development Assessment (June 2013)
D-8    Personnel Action Form (Nov 2012)
D-9    Personnel Action Form (Aug 2013)
D-10   Personnel Action Form (Oct 2013)
D-11   Letter from Pegues (May 20__)
D-12   Letter from Miller (Mar 2014)
D-13   Termination Notice (Apr 2014) (also P-4)

The authenticity and admissibility in evidence of the preceding exhibits are stipulated. If the authenticity or admissibility of any of the preceding exhibits is objected to, the exhibit must be identified below, together with a statement of the specified evidentiary ground(s) for the objection(s):

Plaintiff objects to the following:

D-3    FRE 401, FRE 402, FRE 403
D-4    FRE 401, FRE 402, FRE 403
D-5    FRE 401, FRE 402, FRE 403
D-6    FRE 401, FRE 402, FRE 403
D-7    FRE 401, FRE 402, FRE 403
D-8    FRE 401, FRE 402, FRE 403
D-9    FRE 401, FRE 402, FRE 403
D-10   FRE 401, FRE 402, FRE 403
D-11   FRE 401, FRE 402, FRE 403, hearsay
D-12   FRE 401, FRE 402, FRE 403, hearsay

11.    The following is a list and brief description of charts, graphs, models, schematic diagrams, and similar objects which will be used in opening statements or closing arguments, but which **will not** be offered in evidence:

The parties reserve the right to use enlargements of any exhibit admitted into evidence.

Objections, if any, to use of the preceding objects are as follows:

If any other objects are to be used by any party, such objects will be submitted to opposing counsel at least three business days before trial. If there is then any objection to use of the objects, the dispute will be submitted to the court at least one business day before trial.

12.    The following is a list of witnesses Plaintiff anticipates calling at trial (excluding witnesses to be used solely for rebuttal or impeachment). All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with the trial judge before commencement of trial. The listing of a **WILL CALL** witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary.

FORM 3 (ND/SD MISS. DEC. 2011)

| | Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|---|
| 1. | Tamisha Pegues | Will | F/L/D | Oxford, MS |
| 2. | Amanda May | May | F/L/D | Oxford, MS |
| 3. | Stephanie Spears | May | F/L/D | Oxford, MS |
| 4. | Faye Miller | May | F/L/D | Oxford, MS |
| 5. | Corliss Sullivan | May | F/L/D | Oxford, MS |
| 6. | Myra Fondon | May | F/L/D | Oxford, MS |
| 7. | Marie Rea | May | F/L/D | Randolph, MS |
| 8. | Tasha Evans | May | F/L/D | Oxford, MS |
| 9. | Veronica Reed | May | F/L/D | Oxford, MS |
| 10. | Donna Perry | May | F/L/D | Oxford, MS |
| 11. | Star Joiner | May | F/L/D | Oxford, MS |
| 12. | Tammy Lipsey | May | F/L/D | Oxford, MS |
| 13. | May Pegues | May | F/D | Oxford, MS |
| 14. | Michael Brown | May | F/D | Oxford, MS |
| 15. | Dr. Thomas Glasgow | May | E/D | Oxford, MS |
| 16. | Kelly Shinall, PT | May | E/D | Oxford, MS |
| 17. | Brian Wicker, PT | May | E/D | Oxford, MS |
| 18. | Kirk Kinard, DO | May | E/D | Oxford, MS |
| 19. | Teresa S. Raby, NP | May | E/D | Oxford, MS |
| 20. | Michael Koury, MD | May | E/D | Oxford, MS |
| 21. | Emilee Young, NP | May | E/D | Oxford, MS |
| 22. | Antone Nichols, DO | May | E/D | Oxford, MS |
| 23. | Jason M. Waller, DO | May | E/D | Oxford, MS |

Will testify live.

Will testify by deposition:

Plaintiff reserves the right to use the deposition of any witness deposed in this matter if that person is unavailable for trial.

State whether the entire deposition, or only portions, will be used. Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise). All controversies not resolved by the parties **must** be submitted to the trial judge not later than fourteen days before trial. All objections not submitted within that time are waived.

FORM 3 (ND/SD MISS. DEC. 2011)

**13.** The following is a list of witnesses Defendant anticipates calling at trial (excluding witnesses to be used solely for rebuttal or impeachment). All listed witnesses must be present to testify when called by a party unless specific arrangements have been made with the trial judge before commencement of trial. The listing of a **WILL CALL** witness constitutes a professional representation, upon which opposing counsel may rely, that the witness will be present at trial, absent reasonable written notice to counsel to the contrary.

| | Name | Will/ May Call | [F]act/ [E]xpert [L]iability/ [D]amages | Business Address & Telephone Number |
|---|---|---|---|---|
| 1. | Tasha Evans | May | F/L/D | Batesville, MS |
| 2. | Myra Fondon | May | F/L/D | Oxford, MS |
| 3. | Amanda May | May | F/L/D | Oxford, MS |
| 4. | Faye Miller | May | F/L/D | Oxford, MS |
| 5. | Tamisha Pegues | May | F/L/D | Oxford, MS |
| 6. | Donna Perry | May | F/L/D | Sardis, MS |
| 7. | Marie Rea | May | F/L/D | Randolph, MS |
| 8. | Veronica Reed | May | F/L/D | Oxford, MS |
| 9. | Stephanie Spears | May | F/L/D | Oxford, MS |
| 10. | Corliss Sullivan | May | F/L/D | Oxford, MS |

Will testify live.

Will testify by deposition: Defendants reserve the right to use the deposition of any witnessed deposed in this matter if that person is unavailable for trial.

State whether the entire deposition, or only portions, will be used. Counsel **must** confer, no later than twenty-one days before the commencement of trial, to resolve **all** controversies concerning **all** depositions (electronically recorded or otherwise). All controversies not resolved by the parties **must** be submitted to the trial judge not later than fourteen days before trial. All objections not submitted within that time are waived.

**14.** This is a jury case.

**15.** Counsel suggests the following additional matters to aid in the disposition of this civil action:

None.

**16.** Counsel estimates the length of the trial will be 2-3 days.

FORM 3 (ND/SD MISS. DEC. 2011)

**17.** As stated in paragraph 1, this pretrial order has been formulated (a) at a pretrial conference before a judicial officer, notice of which was duly served on all parties, and at which the parties attended as stated above, or (b) the final pretrial conference having been dispensed with by the judicial officer, as a result of conferences between the parties. Reasonable opportunity has been afforded for corrections or additions prior to signing. This order will control the course of the trial, as provided by Rule 16, Federal Rules of Civil Procedure, and it may not be amended except by consent of the parties and the court, or by order of the court to prevent manifest injustice.

ORDERED, this the 18th day August, 2017.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

*/s/ Ron L. Woodruff*
Jim Waide, MS Bar No. 6857
Rachel Pierce Waide, MS Bar No. 100420
Ron L. Woodruff, MS Bar No. 100391
WAIDE & ASSOCIATES, P.A.
Attorneys for Plaintiff

*/s/ Benny M. May*
Benny M. May, MS Bar No. 100108
Tommy D. Goodwin, MS Bar No. 100791
Office of the Attorney General
Attorneys for Defendants

Entry of the preceding Pretrial Order is recommended by me on this, the __15th__ day of

August, 2017.

s/Jane M. Virden
UNITED STATES MAGISTRATE JUDGE