IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**TAMISHA PEGUES**                                                                  **PLAINTIFF**

**VS.**                                        **CAUSE NO. 3:15-CV-00121-MPM**

**MISSISSIPPI VETERANS AFFAIRS BOARD**                      **DEFENDANT**

**PLAINTIFF'S MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR
JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL**

COMES NOW Plaintiff Tamisha Pegues, by and through counsel, and files this Memorandum Brief in Support of Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial, and in support thereof would respectfully show unto the Court as follows:

**I. INTRODUCTION**

Plaintiff Tamisha Pegues ("Pegues") filed her Complaint [Docket 1] on July 27, 2015; her First Amended Complaint [Docket 6] on October 9, 2015; and her Second Amended Complaint [Docket 27] on November 19, 2015. Defendant Mississippi Veterans Affairs Board ("Defendant") filed its Answer to Pegues' Second Amended Complaint [Docket 28] on December 21, 2015.

This case was tried to a jury on September 11-12, 2017. The jury returned a verdict [Docket 97] in favor of Defendant. On September 13, 2017, this Court entered its Judgment [Docket 98].

**II. FACTS**

Pegues was employed by the Mississippi State Veterans Home[1] from September 8, 2008, until her termination on April 2, 2014. Pretrial Order [Docket 84] at ¶ 9.

---

[1] Defendant Mississippi Veterans Affair Board was substituted as the defendant at trial by agreement of all parties.

While catching a falling patient at work on December 4, 2013, Pegues suffered a ruptured disk. At trial, Defendant stipulated that Pegues does, in fact, have a "disability," within the meaning of the Rehabilitation Act of 1973. On February 24, 2014, Pegues' physician placed her on light duty. Two (2) of Pegues' co-workers testified that, with their aid, Pegues could continue to perform the requirements of her job. Furthermore, witnesses from both sides testified that it is customary for all employees, whether disabled or not, to request the assistance of a co-worker when lifting some patients.

On March 17, 2014, Pegues reported to her Workers' Compensation insurance adjuster that her immediate supervisor was requiring her to handle patients other than those on her light duty run. Pegues testified, however, that she continued to perform all job duties assigned to her even though they were outside her light duty work assignments. That adjuster reported Pegues' complaint to Defendant's business office manager, Corliss Sullivan.[2] Sullivan immediately contacted Pegues and informed her that Defendant was abolishing light duty work. Approximately three (3) weeks later, on April 2, 2014, Defendant, through its Assistant Director of Nursing, Stephanie Spears, notified Pegues that she was terminated. The sole reason assigned for Pegues' termination was that Pegues was unable to perform her job. (*See* Job Content Questionnaire (2012) [Trial Exhibit D-4] and Termination Notice (April 2014) [Trial Exhibit D-13], attached to Plaintiff's Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial as Exhibits "A" and "B," respectively.)

Amanda May, director of Defendant's Oxford facility, testified that she made the decision to terminate Pegues, and that the decision was made in connection with a telephone conversation in

---

[2] Sullivan also handled all Workers' Compensation issues for the facility.

which she agreed with all of the directors of all of Defendant's other facilities that light duty work would no longer be available.

Defendant's assigned reason for this new no light duty policy was that a person on light duty cannot perform the required job responsibilities. Defendant buttressed this defense with a job content questionnaire, indicating that being able to lift a substantial amount of weight is necessary for the job. (*See* Job Content Questionnaire (2012) [Trial Exhibit D-4], attached to Plaintiff's Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial as Exhibit "A.") Testimony at trial indicated this questionnaire was developed before the Oxford facility acquired a machine that lifts patients.

Amanda May, as well as Assistant Director of Nursing Spears, testified that Defendant has no policy regarding accommodation for employees with disabilities. May further testified that there was no discussion with Pegues before she was terminated about accommodating her disability. The matter of seeking to accommodate Pegues' disability was not discussed with Pegues at all before Defendant terminated Pegues.

### III. STANDARD OF REVIEW

**A.  Judgment as a Matter of Law**

FEDERAL RULE OF CIVIL PROCEDURE 50(a)(1) provides:

>    (a)    Judgment as a Matter of Law.
>
>    (1)    In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
>    (A)    resolve the issue against the party; and

>> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000). Judgment as a matter of law under Rule 50(b) is "proper after a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Ford*, 230 F.3d at 830; *see also Evans v. Ford Motor Co.*, 484 F.3d 329, 334 (5th Cir. 2007) (ordering entry of judgment as a matter of law after verdict).

### B. Motion for New Trial

A court may grant a new trial ". . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." FED. R. CIV. P. 59(a). RULE 59 "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). A new trial may be granted if "the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith*, 773 F.2d at 613.

### IV. ARGUMENT

**A. Pegues Is Entitled to Judgment as a Matter of Law Because Defendant Did Not Engage in an Interactive Process Before Terminating Pegues. Alternatively, Pegues Was Entitled to a Jury Instruction on this Issue.**

During the jury instruction conference, Pegues submitted a jury instruction, P-10, which informed the jury that the "law requires the employer to engage in a good faith discussion or

'interactive process' with the employee before terminating the employee." (*See* Jury Instruction P-10, attached to Plaintiff's Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial as Exhibit "C.") This Court refused this instruction. This Court also refused Pegues' motion for a judgment as a matter of law, which was made at the close of Defendant's proof. The motion was based, in part, on Defendant's admission that it had not talked with Pegues about accommodating her disability.

On September 12, 2017, District Judge Sharion Aycock wrote in *Head v. City of Columbus Light & Water Dep't*, 2017 WL 4015657 (N.D. Miss. 2017):[3]

> The Fifth Circuit has held that "ADA compliance requires an employer to engage in an interactive process with an employee who requests an accommodation for his disability to ascertain what changes could allow him to continue working." *Dillard*, 837 F.3d at 562 (citing *LHC Grp.*, 773 F.3d at 700). "In other words, employer and employee must work together in good faith, back and forth, to find a reasonable accommodation." *Id.* (citing *Chevron Phillips*, 570 F.3d at 621–22). The Fifth Circuit has further characterized this process, as "ongoing" and "reciprocal," "not one that ends with the first attempt at accommodation, but one that continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.* at 562-63 (internal quotations omitted).

*Head*, 2017 WL 4015657, at *9.[4]

In the present case, Defendant gave Pegues no opportunity to discuss an accommodation. Defendant immediately suspended Pegues upon her making the complaint about being required to

---

[3] *Head* was decided under the ADA; however, the ADA and the Rehabilitation Act of 1973 are interpreted according to the same standards. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 208 (3d Cir. 2009).

[4] The Court, in *Head*, granted summary judgment in favor of the defendant on other grounds, finding that there "was not a request for an accommodation as contemplated by the ADA." *Head*, 2017 WL 4015657, at *10. Any request that the plaintiff in *Head* might have made was "unrelated to the essential functions of Head's job." *Head*, 2017 WL 4015657, at *10.

work outside of light duty, and abolished light duty work altogether when it terminated her. Similar to *Cummins v. Curo Health Servs., LLC*, 2017 WL 473896, *3 (N.D. Miss. 2017), "[b]ased on the record in this case, it appears that [defendant] terminated any interactive process or flexible dialogue with the Plaintiff when they fired her."

Defendant may argue that no interactive process was required in this case because Defendant's supervisor claimed that Pegues refused to perform even light duty work. This testimony is not controlling for two (2) reasons. First, there was no claim that the supervisor had anything to do with the termination decision. The decision-maker testified that she made the decision based upon Pegues' inability to perform the work. Secondly, even if the immediate supervisor's testimony had been a factor in the employment decision, that would not have alleviated the need to have the matter submitted to a jury in light of the decision-maker's claim that the reason for the decision was Pegues' inability to perform the job.

Pegues is entitled to judgment as a matter of law because Defendant failed to engage in an interactive process with her.

> **B.** **Pegues Is Entitled to Judgment as a Matter of Law Because There Was No Legally Sufficient Evidentiary Basis for a Reasonable Jury to Find That Defendant Did Not Fail to Accommodate Pegues' Disability.**

This Court can grant Pegues' motion for judgment as a matter of law even though it denied her motion at trial and submitted the issue to the jury. The United States Supreme Court has emphasized the "accepted practice of permitting the jury to make an initial judgment about the sufficiency of the evidence" under which district courts are "encouraged to submit the case to the jury, rather than granting [Rule 50(a)] motions," and then to consider the sufficiency of the evidence post-verdict. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 405-06 (2006).

A reasonable jury, after hearing all of the proof in this case, should have found in favor of Pegues. The proof was clear that Pegues was fired, not for failing to do assigned non-light duty tasks, but for being unable to perform her job. (*See* Termination Notice (April 2014) [Trial Exhibit D-13], attached to Plaintiff's Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial as Exhibit "B.") Moreover, the evidence was undisputed that Defendant engaged in no interactive process with Pegues prior to her termination. As explained by the Court in *Head*, such a process is mandatory. *Head*, 2017 WL 4015657 at *9. Defendant, in this case, admitted its failure to meet that requirement; thus, Pegues is entitled to judgment as a matter of law. No reasonable jury could have found that Defendant failed to accommodate Pegues' disability.

### C. Alternatively, Pegues Is Entitled to a New Trial Because the Verdict Was Contrary to the Overwhelming Weight of the Evidence.

The evidence at trial was that Pegues performed her job, both with and without assistance from co-workers, after her disabling back injury. Defendant apparently had no problem with Pegues until she reported to her Workers' Compensation insurance adjuster that Defendant was requiring her to perform non-light duty. Almost as soon as Defendant was made aware of Pegues' report, it ended all light duty and terminated Pegues.

Moreover, Defendant admitted that it failed entirely to offer any interactive process whatsoever to Pegues. Defendant wilfully terminated her for "not being able to fulfill the duties required," while knowing it offered not even a conversation about how to accommodate her disability, which, ironically, she sustained on the job.

Accordingly, should this Court decline to award Plaintiff judgment as a matter of law, it should afford Plaintiff a new trial.

## V. CONCLUSION

By refusing either to grant judgment as a matter of law for Pegues or to give the jury an instruction that it could consider whether Defendant's failure to engage in an interactive process with Pegues, the Court erred. The Court should either grant judgment as a matter of law or, alternatively, order a new trial.

RESPECTFULLY SUBMITTED, this the 10th day of October, 2017.

TAMISHA PEGUES, Plaintiff

By: */s/ Jim Waide*
Jim Waide, MS Bar No. 6857
waide@waidelaw.com
Ron L. Woodruff, MS Bar No. 100391
rlw@waidelaw.com
Rachel Pierce Waide, MS Bar No. 100420
rpierce@waidelaw.com
WAIDE & ASSOCIATES, P.A.
332 North Spring Street
Tupelo, MS 38804-3955
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

This will certify that undersigned counsel for Plaintiff has this day filed the above and foregoing **Memorandum Brief in Support of Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial** with the Clerk of the Court, utilizing the federal court electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

**Benny M. (Mac) May, Esquire**
**Office of the Mississippi Attorney General**
**Civil Litigation Division**
**Post Office Box 220**
**Jackson, MS 39205-0220**
**bemay@ago.state.ms.us**
**JSPIL@ago.state.ms.us**
**LMiller@mdoc.state.ms.us**
**JGStancil@mdoc.state.ms.us**
**CMARK@ago.state.ms.us**

**Tommy D. Goodwin, Esquire**
**Office of the Mississippi Attorney General**
**Civil Litigation Division**
**Post Office Box 220**
**Jackson, MS 39205-0220**
**tgood@ago.state.ms.us**
**lvincent@mdoc.state.ms.us**
**NTR27@ago.state.ms.us**
**goodwinlaw@gmail.com**
**JGStancil@mdoc.state.ms.us**
**TPRUI@ago.state.ms.us**
**lmiller@mdoc.state.ms.us**

DATED, this the 10th day of October, 2017.

*/s/ Jim Waide*
Jim Waide