IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

TAMISHA PEGUES                                                              PLAINTIFF

VS.                                           CIVIL ACTION NO. 3:15CV121-MPM-JMV

MISSISSIPPI STATE VETERANS HOME                                  DEFENDANT

**ORDER**

This cause comes before the court on plaintiff Tamisha Pegues' Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial. Following a trial held on September 11-12, 2017, the jury rendered a defense verdict in this case, finding that defendant Mississippi State Veterans Home ("MSVH") did not fail to reasonably accommodate plaintiff's disability and that it did not otherwise terminate her on the basis of that disability. In addressing plaintiff's motion, this court will concentrate primarily upon plaintiff's argument that it failed to properly instruct the jury, since it has already made clear its view that this case involved fact issues which were appropriate for resolution by a jury. Indeed, this court made its view in this regard clear in denying plaintiff's motion for a judgment as a matter of law at trial, and there is nothing in plaintiff's post-trial motion which has caused it to alter its view in this regard. Moreover, defendant has thoroughly briefed this issue in its response to the motion for new trial, and plaintiff declined to file a reply to that response. This court therefore concludes that the jury's verdict was supported by the evidence in this case, for essentially the reasons stated in defendant's brief, and it now turns to the jury instruction issues raised by plaintiff.

In instructing the jury in this case, this court relied upon the Fifth Circuit's quite thorough model jury instructions, which it incorporated largely verbatim. Pegues notes that, during the jury instruction conference, she submitted an additional proposed jury instruction, P-10, which is nowhere to be found in the lengthy model jury instructions prepared by the Fifth Circuit. Jury instruction P-10 would have informed the jury as follows:

> The Court instructs the jury that when an employer knows an employee has a disability, law requires the employer to engage in a good faith discussion or "interactive process" with employee before terminating the employee. The purpose of this discussion is to determine if there is any accommodation that can be made in order to keep from terminating the employee.

This Court refused this instruction, which was truly a "last minute" addition to plaintiff's proposed instructions.

This court notes that plaintiff failed to include P-10 in the proposed instructions which she submitted during the week before trial, and it was not even submitted at the informal jury instruction conference between the parties' counsel and this court's law clerk which was held after the first day of trial. This court routinely utilizes such informal conferences as a means of narrowing and clarifying the legal issues for its consideration, since the actual jury instruction conference on the record provides a poor forum for the consideration of new legal authorities and arguments. In order to benefit from this process, however, it is incumbent upon the parties to not wait until the last minute to submit their proposed instructions. It also seems clear that submitting eleventh-hour proposed jury instructions has a great potential to ambush opposing counsel, who would have had no reason to suspect that new legal authorities or instructions would be proposed at the formal conference.

In light of the foregoing, this court believes that, as a procedural matter, plaintiff was

clearly derelict in submitting P-10. Moreover, the question arises as to why, if P-10 truly represents a required part of the jury instructions in a Rehabilitation Act case, the Fifth Circuit did not see fit to include it in its proposed instructions. In arguing that this instruction was legally required, plaintiff writes that:

> On September 12, 2017, District Judge Sharion Aycock wrote in *Head v. City of Columbus Light & Water Dep't*, 2017 WL 4015657 (N.D. Miss. 2017):
>> The Fifth Circuit has held that "ADA compliance requires an employer to engage in an interactive process with an employee who requests an accommodation for his disability to ascertain what changes could allow him to continue working." *Dillard v. City of Austin, Texas,* 837 F.3d 557, 562 (5th Cir. 2016) (citing *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 697 (5th Cir. 2014) *(.* "In other words, employer and employee must work together in good faith, back and forth, to find a reasonable accommodation." *Id.* (citing *EEOC v. Chevron Phillips Chem. Co.,* 570 F.3d 606, 621 (5th Cir. 2009). The Fifth Circuit has further characterized this process, as "ongoing" and "reciprocal," "not one that ends with the first attempt at accommodation, but one that continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed." *Id.* at 562-63 (internal quotations omitted).
>
> *Head*, 2017 WL 4015657, at *9.
>
> In the present case, Defendant gave Pegues no opportunity to discuss an accommodation. Defendant immediately suspended Pegues upon her making the complaint about being required to work outside of light duty, and abolished light duty work altogether when it terminated her. Similar to *Cummins v. Curo Health Servs., LLC*, 2017 WL 473896, *3 (N.D. Miss. 2017), "[b]ased on the record in this case, it appears that [defendant] terminated any interactive process or flexible dialogue with the Plaintiff when they fired her."

[Plaintiff's brief at 5-6]. Thus, there are five cases which are either cited or indirectly referenced in plaintiff's briefing on this issue, namely *Head*, *Dillard*, *LHC*, *Chevron Phillips* and *Cummins*. One thing these five decisions have in common is that they all involved either summary judgment rulings or the appeals of such rulings. None of the cited decisions were rendered in the

jury instruction context, and none of them suggest that a court should instruct a jury regarding the "interactive" nature of the accommodation process.

Crucially, defendant notes in its briefing that the Fifth Circuit has issued an opinion which directly refutes plaintiff's arguments on this issue. In *Picard v. St. Tammany Par. Hosp.*, 423 F. App'x 467, 470 (5th Cir. 2011), the Fifth Circuit affirmed a district court's rejection of a jury instruction that a violation of the ADA occurs when an employer fails to engage in an "interactive process." In so ruling, the Fifth Circuit wrote that:

> We have observed that the "ADA's regulations state that 'it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation' in order to craft a reasonable accommodation." *Loulseged v. Akzo Nobel Inc.*, 178 F. 3d 731, 735 (5th Cir. 1999) (quoting 29 C.F.R. § 1630.2(o)(3)). Of course, that which "may be" necessary is not universally required. In fact, [Plaintiff's] proposed per se rule is ill-suited to consideration of the interactive process. We have stated that "there may be some situations in which the reasonable accommodation is so obvious that a solution may be developed without either party consciously participating in an interactive process." *Id*. at 736. This is so because the "interactive process is not an end i[n] itself—it is a means to the end of forging reasonable accommodations." *Id*. "The process must thus be viewed on a case-by-case basis." *Id*.

*Picard*, 423 F. App'x at 470. As noted previously, plaintiff declined to file a reply brief on her motion for new trial, and this court believes that defendant's citation to *Picard* certainly calls for such a reply, if it is to somehow be considered distinguishable authority in this case.

*Picard* aside, this court granted a quite lengthy instruction on the issue of reasonable accommodation, which was taken largely verbatim from the Fifth Circuit's model instruction 11.10. Specifically, Jury Instruction 2 informed the jury as follows:

**JURY INSTRUCTION NO. 2**
Plaintiff Tamisha Pegues claims that the Mississippi Veterans Home failed to reasonably accommodate her disability in violation of the Rehabilitation Act.

4

The Veterans Home denies Pegues' claims and contends Pegues was not a "qualified individual" and that the Veterans Home could not reasonably accommodate her disability.

The law requires an employer to make reasonable accommodations for an employee's disability. Once again, the parties have stipulated to the following:
1. Pegues had a ruptured disc;
2. Such a ruptured disc substantially limited Pegues' ability to perform physical tasks and thus constituted a disability;
3. The Veterans Home knew of Pegues' disability;

Therefore, to succeed in this case, Pegues must prove each of the following by a preponderance of the evidence:
4. Pegues could have performed the essential functions of the position of Direct Care Worker when the Veterans Home terminated her employment if she had been provided with strictly light duty assignments;
5. Pegues requested an accommodation, namely strictly light duty assignments.
6. Providing this accommodation would have been reasonable; and
7. The Veterans Home failed to provide such reasonable accommodation.

[discussion of qualification issue deleted].

The term "accommodation" means making modifications to the work place that allow a person with a disability to perform the essential functions of the job, to attain the level of performance available to similarly situated employees who are not disabled, or to enjoy equal benefits and privileges of employment as are enjoyed by similarly situated employees who are not disabled.

A "reasonable" accommodation is one that could reasonably be made under the circumstances. It may include, but is not limited to: (a) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; or (b) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials, or policies, the provision of qualified readers or interpreters and other similar accommodations for individuals with disabilities. There may be other reasonable accommodations.

The Veterans Home claims that Pegues' requested accommodation would have imposed an undue hardship on it. An employer need not provide a reasonable accommodation to the known limitations of a qualified employee or applicant if the employer proves that the accommodation would impose an undue hardship on its business operations. The employer has the burden of proving by a preponderance of the evidence that the accommodation would have imposed an undue hardship.

> An "undue hardship" is an action requiring the employer to incur significant difficulty or expense. Factors to be considered in determining whether the assignment of strictly light duty work to Pegues would cause an undue hardship include: (a) the nature and cost of the accommodation; (b) the overall financial resources of Veterans Home involved in the accommodation, the number of persons employed there, the effect on expenses and resources, or the impact otherwise on the Veterans Home's operation; (c) the overall financial resources of the employer, the overall size of the business with respect to the number of employees, and the number, type, and location of its facilities; and (d) the type of operation of the employer, including the composition, structure, and functions of the workforce, the impact of the assignment of strictly light duty work to Pegues on the operation of the Veterans Home, including the impact on the ability of other employees to perform their duties, and any other relevant factors supported by the evidence.
> Fifth Circuit Pattern Jury Instruction 11.10.

[Jury Instruction 2]. Thus, this court instructed the jury at great length regarding the reasonable accommodation issue, using the language and factors that the Fifth Circuit considered to be appropriate for jurors' consideration in this context. The question arises as to why, if specifically instructing the jury regarding an "interactive process" is required, the Fifth Circuit did not include that language in its model instructions.

In the court's view, the interactive nature of the reasonable accommodation process is largely implied in the language of Model Instruction 11.10, since it includes a non-exhaustive discussion of the options available to accommodate disabilities, and it also requires a consideration of the hardships which such accommodations might work upon the employer's operations. In denying plaintiff's proposed instruction P-10, this court did not necessarily believe that the instruction misstated the law *per se*, but its long-settled practice is to rely upon Fifth Circuit model instructions in cases where such instructions are available. Of course, it is often necessary to supplement these model instructions in a particular case, but this court regards P-10 as dealing with the essential nature of the reasonable accommodation process, which is

6

already set forth in great detail in 11.10. In denying P-10, this court chose to simply defer to the Fifth Circuit's own language regarding the proper jury instructions in this context, and nothing in plaintiff's motion causes it to reconsider that decision.

That brings this court to an additional reason why it declined to grant P-10, namely because it believed it to be unduly peremptory in nature. Indeed, it appeared to this court that, focusing solely on the date in which plaintiff was terminated, P-10 could be read as suggesting that, rather than firing her, defendant should have engaged in some vague and unspecified "process" with her, regardless of what had already transpired in her employment. Counsel for plaintiff essentially admitted the peremptory nature of the instruction in the jury instruction conference, stating that:

> MR . MAY : Your Honor , I believe that that's going to gild the lily a bit with regard to the reasonable accommodation claim, the failure to accommodate claim.
> THE COURT : It sounds like a directed verdict on that issue.
> MR . WAIDE : In light of the evidence, it is, Your Honor.

[Jury Instruction Conference transcript at 9].

At the time of the jury instruction conference, this court had already denied plaintiff's motion for directed verdict, and it had no intention of indirectly granting such a motion via a jury instruction which plaintiff's counsel admitted was peremptory in nature. Rather, this court's intent was simply to allow the jury to decide the question of whether defendant reasonably accommodated plaintiff's disability, and the Fifth Circuit's model instructions more than adequately instructed the jurors regarding the law to apply in making this determination.

In addition to the foregoing, this court finds the jury's verdict to have been supported by one reasonable interpretation of the evidence presented at trial, namely that, prior to plaintiff's

termination, defendant had, in fact, tried to accommodate her disability. In particular, this court concludes that the jury could have found such reasonable accommodation in defendant's actions in assigning plaintiff to light duty, before deciding that this experiment was not working out and that it needed personal care assistants who were able to engage in tasks such as heavy lifting. Indeed, as noted in defendant's version of facts set forth in the pretrial order:

> Pegues strained her back on December 4, 2013, while helping care for a resident and returned to work per her physician's orders with no restrictions on December 11, 2013. She worked as a DCW with no restrictions until January 31, 2014, when a friend or relative of Pegues brought a note from her physician stating Pegues was not able to return to work as a result of treatment for injuries sustained on December 4, 2013. Pegues then remained off work per her physician's orders until he released her to return to work with light duty restrictions on February 24, 2014. Defendant May, the Administrator of the Oxford Veterans Nursing Home, identified some tasks that Pegues could perform temporarily in order to accommodate her light duty restrictions. Once Pegues returned to work, her supervisor, Faye Miller, made several verbal complaints to May that Pegues was refusing to perform various tasks requested of her, even though they were well within her light duty restrictions.

[Pretrial order at 4].

This court concludes that, based on the evidence presented at trial, the jury could have reasonably determined that attempts at reasonable accommodation had already occurred at the time plaintiff was fired, in the form of the failed experiment in granting her light duty. The language of P-10, however, would have instructed the jury that defendant was required to conduct a "good faith discussion or interactive process," and this language can be read as suggesting that an additional "sit down" meeting or mediation of some sort was required. This court does not believe that this is necessarily the case, and it thus appears that P-10 might have confused the jury by unduly focusing its attention upon the formalities of the accommodation process in this case, rather than the substance of that process. As quoted previously, the Fifth

8

Circuit wrote in *Picard* that the "proposed per se rule is ill-suited to consideration of the interactive process" and that a jury should instead make a case-by-case determination of this issue. *Id.* It thus seems clear that plaintiff's motion for judgment as a matter of law and/or new trial is not supported by Fifth Circuit law, and it will therefore be denied.

It is therefore ordered that plaintiff's motion for judgment as a matter of law and/or new trial is denied.

SO ORDERED, this the 30th day of October, 2017.

/s/ Michael P. Mills
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI